Opinion issued January 13, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00026-CR

———————————

Anthony Dewayne Lester, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 56th Judicial District Court 

Galveston County, Texas



Trial Court Case No. 08CR0840

 



MEMORANDUM OPINION

A jury found appellant, Anthony
Dewayne Lester, guilty of the offense of intoxication manslaughter[1] with a deadly weapon and
assessed his punishment at confinement for twelve years and a fine of $10,000.  In five points of error, appellant contends that
the evidence is factually insufficient to support his conviction and the trial
court erred in restricting his voir dire examination, admitting evidence regarding
a blood sample taken from him, violating “the Rule,”[2] and denying his new-trial
motion, in which he asserted his trial counsel had provided him ineffective
assistance. 

We affirm. 

Background 

          Kyle
Zunker testified that at approximately 11:00 p.m. on August 15, 2007, he, while
driving his car east on Highway 646, noticed a silver Honda traveling east
“normally down the road” in front of him. 
After he explained that 646 is a two-lane road, which is not divided by
a center lane or median, Zunker noted that he saw a white Lexus traveling west
in the lane of oncoming traffic.  “[R]ight
before the white Lexus was about to pass the silver Honda, it crossed over into
the lane that the silver Honda was in,” and collided with the Honda.  Zunker described the movement of the Lexus as
“very sudden,” “a sudden jolt,” and it entered the lane of oncoming traffic “at
the last possible second.”  After Zunker stopped
his car and called for emergency assistance, he approached the Lexus from a
distance.  He believed that the driver
was unconscious, but he did not get close enough to look inside the car at the
driver.  

          Houston
Police Officer S. Antley testified that on August 15, 2007, he was dispatched
to the scene of the collision.  When he
arrived, Antley saw a gray Honda, “stationary in the middle of the road” facing
northeast, and appellant’s car, a white Lexus, “on the grassy part off the
roadway facing north.”  The Honda was in
“pretty bad” condition, as the “front end had been pushed all the way in” to
the passenger compartment.  The
complainant, Donna Banduch-Lawson, was “pinned in by the engine,” and Antley
was unable to remove her from the car.  Antley
then approached the Lexus where he saw appellant “slumped over in the driver’s
seat” and vomit “splattered all across the front windshield.”  He detected a “very strong odor of alcoholic
beverage” and noted that appellant was “conscious, but not alert,” and he “kept
trying to move” and “mumble something.”  An
emergency medical technician, who inserted a breathing tube for appellant,
informed Antley that he could “smell the alcoholic beverage coming out of the
tube.”  Antley then interviewed Zunker
about his observation of the collision.  Based
on the “position of the vehicles” and what Zunker had told him, Antley
explained that “a combination of things” led him to believe that appellant had
“lost the normal use of his mental and physical faculties” and this caused the
collision.  

Later that night, Officer Antley picked
up a blood sample kit from a police station and went to Memorial Hermann Hospital,
where emergency services personnel had taken appellant.  Although appellant was unconscious and unable
to respond to his request, Antley read to appellant the statutory warnings that
peace officers are required to read to all persons arrested for driving while
intoxicated[3]  and he requested a specimen of appellant’s
blood.  Antley noted on the appropriate
form that, “Subject refused to allow the taking of a specimen and further
refused to sign below as requested by this officer.”  Antley then requested that a nurse draw
appellant’s blood, and, after obtaining the specimen, Antley sealed it in a
container, signed the container, and transported it to the police station for submission
to a crime lab for analysis. 

Claire Flosi, a registered nurse at
Memorial Hermann Hospital, testified that on August 16, 2007, she was the nurse
on record for appellant.  She explained
that, as a matter of routine, she drew blood from appellant for a preliminary
examination, and although she drew the blood, she did not provide any test
results to Officer Antley because that is “clearly” a violation of the Health
Insurance Portability and Accountability Act (“HIPAA”).[4]  Officer Antley presented paperwork to Flosi
for a “mandatory blood draw for law enforcement purposes,” and she drew the
blood in a “sanitary” place and gave a vial of blood to Antley. 

Robert Prince, a Texas Department
of Public Safety forensic scientist, testified that he received the vial
containing appellant’s blood, performed an analysis on the blood sample, and determined
that appellant’s blood-alcohol concentration was 0.21.  The trial court instructed the jury that the
results of Prince’s test were “for the limited purpose of showing that the
individual who was tested had ingested alcohol only at some point before the
time of the test.”  

Sufficiency of the Evidence

In his fifth point of error,
appellant argues that the evidence is factually insufficient to support his
conviction because the “trial is replete with inconsistencies and errors on
behalf of the police investigation and falls short” of proof beyond a
reasonable doubt.

We now review the factual
sufficiency of the evidence under the same appellate standard of review as that
for legal sufficiency.  Ervin v. State, No. 01-10-00054-CR, 2010 WL
4619329, at *2–4 (Tex. App.—Houston [1st Dist.] November 10, 2010, no pet. h.)
(citing Brooks v. State, 323 S.W.3d
893, 901 (Tex. Crim. App. 2010)).  Under
this standard, we are to examine “the evidence in the light most favorable to
the prosecution” and determine whether “a rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt.”  Jackson
v. Virginia, 442 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979).  Evidence is insufficient when the “only
proper verdict” is acquittal.  Tibbs v. Florida, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2218
(1982).  

A person commits the
offense of intoxication manslaughter if the person: (1) operates a motor
vehicle in a public place; (2) is intoxicated; and (3) by reason of that
intoxication causes the death of another by accident or mistake.  Tex.
Penal Code Ann. § 49.08 (Vernon Supp. 2010).

In support of his sufficiency challenge,
appellant emphasizes the evidence contrary to the verdict.  He notes that Zunker did not testify as to
the smell of alcohol from appellant’s car, nor did he testify as to “anything
that would lead him to believe that alcohol was involved in the accident.”  Appellant further notes that another officer
at the scene did not detect any odor of alcohol coming from appellant’s
car.  He points to the fact that the
“black box” in his car was never retrieved, even though it could record data
immediately prior to a crash.  Appellant
asserts that another officer made a clerical error when he noted that the
“road-way was dry when Officer Antley had indicated it was wet.”  And he asserts that the evidence, “taken as a
whole,” is “replete with inconsistencies and errors on behalf of the police
investigation and falls short” of proof beyond a reasonable doubt.  

However, we are to now only to
examine “the evidence in the light most favorable to the prosecution.”  Ervin,
2010 WL 4619329, at *2.  Here, Zunker
testified that he saw appellant’s car cross over into the lane of oncoming
traffic “at the last possible second” and the complainant’s car was driving
normally.  Officer Antley and the
emergency medical technician both observed the smell of alcohol coming from appellant.  Antley explained that “a combination of
things” led him to believe that appellant had “lost the normal use of his
mental and physical faculties” and this caused the collision.  Further, Antley explained the process of
obtaining a blood sample from appellant and the results of a blood test
indicated that appellant was intoxicated at the time of the collision.  

After reviewing all of the evidence
in the light most favorable to the prosecution, a rational trier of fact could
have found the essential elements of the offense of intoxication manslaughter
beyond a reasonable doubt.  See Ervin, 2010 WL 4619329, at *2.  Accordingly, we hold that the evidence is
sufficient to support the jury’s finding of guilt.  

          We overrule
appellant’s fifth point of error.

Voir Dire Examination

          In
his first point of error, appellant argues that the trial court erred in
denying him “sufficient time” to “adequately voir dire the [j]ury” on the
State’s burden of proof because it “placed an undue constraint” on his ability to
“intelligently exercise his preemptory challenges thereby denying him his right
to a trial by a truly fair and impartial jury.” 


Texas trial courts have broad
discretion over the jury-selection process. 
Barajas v. State, 93 S.W.3d 36,
38 (Tex. Crim. App. 2002).  A trial court
may impose reasonable restrictions on the exercise of voir dire examination,
including reasonable limits on the amount of time each party may question a
venire panel.  Wappler v. State, 183 S.W.3d 765, 772 (Tex. App.—Houston [1st
Dist.] 2005, pet. ref’d).  We review a
trial court’s restriction of voir dire examination for an abuse of discretion.  Barajas,
93 S.W.3d at 38.  Absent an abuse of
discretion, we will not reverse the trial court’s refusal to allow defense
counsel additional time to question the venire panel.  McCarter
v. State, 837 S.W.2d 117, 119 (Tex. Crim. App. 1992); Smiley v. State, 129 S.W.3d 690, 696 (Tex. App.—Houston [1st Dist.]
2004, no pet.).  

A trial court may not
prohibit defense counsel from asking proper voir dire questions.  Rhoades v. State, 934
S.W.2d 113, 118 (Tex. Crim. App. 1996).  When a defendant complains that he was not
allowed to question the venire collectively, we determine whether (1) he attempted
to prolong the voir dire by asking questions that were irrelevant, immaterial,
or unnecessarily repetitious and (2) the questions he was not permitted to ask
were proper voir dire questions.  McCarter, 837
S.W.2d at 119. 
When a defendant’s voir dire examination was terminated as he attempted
to question venire members individually, we determine whether he was prevented
from examining a prospective juror who actually served on the jury.  Id.; Ratliff, 690
S.W.2d at 600.  

Here, the trial court began voir
dire by instructing the jury on the State’s burden of proof.  Appellant’s trial counsel was then given the
opportunity to discuss, at length, the various burdens of proof, and he
explained that “beyond a reasonable doubt” is the highest burden.  He asked the venire panel if anyone on it had
“any concerns with [his] explanation for what beyond a reasonable doubt”
means.  After examining the venire panel
for one hour and three minutes, counsel informed the court that he was
“wrapping up,” but he continued questioning the panel.  He then attempted to return to the issue of
the State’s burden of proof as follows:

[Trial Counsel]:      Second concept
that I didn’t do a good enough job teaching y’all was the burden of proof. Who
has the burden of proof, me or the prosecutor? Okay. So if you define those two
concepts, okay, and no evidence has been shown to you whatsoever, zero, No. 1,
how would you —

 

[Venire Member]:   Not guilty.

 

[Trial Court]:          We need to move along. We’ve asked
these questions a couple of times. So, unless you have a new question.

 

[Trial Counsel]:      I don’t have a new question, but I do feel
that the jury members as a whole demonstrated that they didn’t understand the
concepts based upon their answers. So, I’m requesting a little bit of time to
clarify.

 

[Trial Court]:          No, Sir.

 

[Trial Counsel]:      That’s all I have. But the concepts are —

 

[Trial Court]:          No, Sir.

 

[Trial Counsel]:      [Appellant] as
he sits before you right now here today is not guilty. Thank you.

 

Immediately thereafter, the State and appellant’s
trial counsel approached the bench in order to make their strikes for cause.  Trial counsel did not make a bill of
exception and did not make any objections after the jury was selected.     

In order
to preserve his complaint for our review, appellant must show that the trial
court prevented him from asking particular proper questions.  Sells v.
State, 121 S.W.3d 748, 755–66 (Tex. Crim. App. 2003); Mohammed v. State, 127 S.W.3d 163, 170 (Tex. App.—Houston [1st
Dist.] 2003, pet. ref’d).  That the trial
court generally disapproved of an area of inquiry from which proper questions
could have been formulated is not enough for us to determine error because the
trial court might have allowed a proper question had it been submitted for the
court’s consideration.  Id.; see
Tex. R. App. P. 33.1(a)(1)(A).  To preserve error for review, an appellant
must make the trial court aware of any objections or complaints at a time when
there is an opportunity for the trial court to cure or respond to the
complaints.  Loredo v. State, 159 S.W.3d 920, 923 (Tex. Crim. App. 2004).  Here, although appellant requested more time
to “clarify” the State’s burden of proof, he did not inform the trial court of
any questions he wanted to ask.  See Dhillon v. State, 138 S.W.3d 583,
590 (Tex. App.—Houston [14th Dist.] 2004, no pet.).  Accordingly, we hold that appellant failed to
preserve his complaint for review.  See Mohammed, 127 S.W.3d at 170. 

We overrule appellant’s first point
of error.

Admission of Blood Sample

          In
his second point of error, appellant argues that the trial court erred in admitting
evidence regarding his blood sample because Nurse Flosi did not provide
specific evidence about the “sanitary area” in which she drew appellant’s blood
and the “blood draw” was illegal due to a “lack of probable cause and violation
of HIPAA.” 

The State argues that appellant has
waived any review of the trial court’s admission of evidence regarding
appellant’s blood test on the ground that there is no proof that the test was
conducted in a “sanitary” area.  To
preserve error for appellate review, a timely and reasonably specific objection
is required.  Tex. R. App. P. 33.1(a); Broxton v. State, 909 S.W.2d 912, 918
(Tex. Crim. App. 1995).  The argument made on appeal must correspond
with the objection made to the trial court; an appellant cannot object based on
one legal theory at trial and use this objection to support another legal
theory on appeal.  Broxton, 909 S.W.2d at 918;
see also Hailey v. State, 87 S.W.3d 118, 122 (Tex. Crim. App. 2002) (holding that
violation of “ordinary notions of procedural default” occurs when court of
appeals reverses trial court’s decision based on error raised for first time on
appeal).         During trial, appellant argued that evidence regarding his
blood sample should have been suppressed because “Officer Antley did not have
probable cause for the request.” 
Appellant’s argument on appeal that the State did not prove that his
sample was taken in a “sanitary” area bears no resemblance to the ground he
presented to the trial court.  See Hailey, 87 S.W.3d 120.  Accordingly, appellant has waived any error
on the ground that his blood was not drawn in a sanitary area.  See id.  

In regard to his argument that the
trial court erred in denying his motion to suppress evidence on the ground that
Officer Antley did not have “probable cause for the request,” appellant asserts
that Antley, prior to the blood draw, obtained information from someone at
Memorial Hermann Hospital about his blood-alcohol concentration “in violation
of the HIPAA laws” and “this illegally obtained information . . . formed
part of the basis” for the probable cause needed in order to draw blood. 

The appropriate standard for reviewing
a trial court’s ruling on a motion to suppress evidence is bifurcated; we give
almost total deference to a trial court’s determination of historical facts and
review de novo the court’s application of the law.  Maxwell v. State,
73 S.W.3d 278, 281 (Tex. Crim. App. 2002).  In reviewing a ruling on a question of the
application of law to facts, we review the evidence in the light most favorable
to the trial court’s ruling.  Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  However, we review de novo the trial
court’s determination of reasonable suspicion and probable cause.  Id. at 87.
 We note that at a suppression hearing,
the trial court is the sole and exclusive trier of fact and judge of the
witnesses’ credibility.  Maxwell,
73 S.W.3d at 281.  Accordingly, the trial court may choose to
believe or to disbelieve all or any part of a witness’s testimony.  State v. Ross,
32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

          A
peace officer may obtain a blood specimen from an individual involuntarily if:
(1) there was a life-threatening accident; (2) the defendant was arrested for
an intoxication offense under Chapter 49 of the Texas Penal Code[5]; and (3) the arresting
officer reasonably believed that the accident occurred as a result of the
offense.  Tex. Transp. Code Ann. § 724.012(b) (Vernon Supp. 2010); Badgett v. State, 42 S.W.3d 136, 138
(Tex. Crim. App. 2001).  Moreover, a
blood specimen may be obtained from a person who is dead, unconscious, or
otherwise incapable of refusal.  Id. § 724.014 (Vernon 1999).  An arresting officer’s belief must be based
upon specific and articulable facts regarding causation.  Badgett,
42 S.W.3d at 139.  Such an articulable
belief may result from any number of factors, including but not limited to,
witness interviews, conclusions drawn from experience in combination with
observation of an accident scene, or determinations made by an accident
reconstruction team.  Id. 


In his motion to suppress evidence,
appellant asserted that Officer Antley “indicated that he had no basis to
believe that [appellant] had loss of normal use of his mental faculties[,] he
had no basis to believe that [appellant] had lost normal use of his physical
faculties,” and “he had no basis to believe that the accident was caused in any
way, shape or form in part by intoxication.” 
In support of this argument appellant relies on Badgett.  

In Badgett, the Texas Court of Criminal Appeals reversed a court of
appeals holding that section 724.012(b) “did not require law enforcement
personnel to possess specific evidence that an intoxicated defendant was at
fault in causing an accident before a blood specimen can be taken involuntary,
but that merely an accident involving an intoxicated driver is
sufficient.”  Id. at 137. The officer
performed a field sobriety test on the defendant, and, believing he was
intoxicated, placed him under arrest.  Id. 
The officer testified that, based on his experience, he believed that the
defendant could have been at fault for the accident because he was
intoxicated.  Id.  At the time the
defendant was arrested, the accident reconstruction team had not yet determined
that the defendant was at fault.  Id. 
The officer did not speak to any witnesses about the accident, and he had
little knowledge about the facts surrounding the accident.  See id.  The Texas Court of Criminal Appeals concluded
that something more than the “bare occurrence of an accident and an
intoxication-offense arrest” is required before the State may make a “seizure
as intrusive as the involuntary drawing of blood.”  Id.
at 140.

Here, in contrast, there is
evidence that appellant was intoxicated at the time of the collision.  Officer Antley and the emergency medical
technician noticed the strong odor of alcohol coming from appellant’s breath, a
witness testified to appellant’s erratic driving, and vomit was present in
appellant’s car.  Zunker, an eyewitness
to the collision, informed Officer Antley that he saw appellant drive his car
into the lane of oncoming traffic “at the last possible second.”  He described the movement of appellant’s car
as “very sudden,” and noted that the complainant did not swerve from her lane.  Officer Antley opined that the collision was
caused by appellant’s intoxication at the time he requested the blood draw
based on Zunker’s description of the collision, the “odor of alcohol” coming
from appellant, the vomit on the windshield of appellant’s car, the emergency
medical technician’s confirmation that he smelled alcohol on appellant’s breath,
and the position of the vehicles.  Accordingly,
appellant’s reliance on Badgett is
misplaced. 

          Appellant
further asserts that “Officer Antley in his attempt to secure a legal blood
draw got information illegally from the nurse prior to securing the
blood.”  However, Antley testified that
he made his decision to obtain a blood sample “based solely on the information
that [he] had at the time,” and Nurse Flosi testified that she did not provide
appellant’s medical information to Officer Antley prior to the blood draw
because it is “clearly” a HIPAA violation. 
The trial court was the sole fact finder, and it was free to choose to
believe Antley and Flosi’s testimony.  See Ross, 32 S.W.3d at 855.  Accordingly, we hold that the trial court did
not err in denying appellant’s motion to suppress evidence and in admitting
evidence regarding his blood sample.

We overrule appellant’s second
point of error.

The Rule

          In
his third point of error, appellant argues that the trial court erred in
“allowing” Lawson, the husband of the complainant, to “remain in the courtroom”
after testifying, “with the understanding . . . that the State
was going to re-call him during the punishment phase of the trial” because “the
Rule” had been invoked.  See Tex.
R. Evid. 614.

          The
purpose of rule 614
is to prevent the testimony of one witness from influencing the testimony of
another.  Russell v. State,
155 S.W.3d 176, 179 (Tex. Crim. App. 2005); Phillips v. State,
64 S.W.3d 458, 459 (Tex. App.—Houston [1st Dist.] 2001, no pet.).
 Once the rule
is invoked, witnesses are instructed by the trial court that they cannot
converse with one another or with any other person about the case, except by
permission from the court.  Tex. Code. Crim. Proc. Ann.
art. 36.06 (Vernon 2007); Russell,
155 S.W.3d at 180.  Further, the trial court must exclude
witnesses from the courtroom during the testimony of other witnesses.  Tex. R. Evid. 614.  However, if a witness violates this rule, the
trial court still has discretion to allow testimony from the witness.  Bell v. State,
938 S.W.2d 35, 50 (Tex. Crim. App. 1996).  On appeal, the trial court’s decision to admit
testimony will not be disturbed absent an abuse of that discretion.  Id.

In reviewing the trial court’s decision
to allow testimony, we determine whether a defendant was harmed or prejudiced
by the witness’s violation.  Id.
 Harm is established by showing that (1)
the witness actually conferred with or heard testimony of other witnesses and
(2) the witness’s testimony contradicted the testimony of a witness from the
opposing side or corroborated testimony of a witness she had conferred with or
heard.  Id.

Appellant invoked the rule prior to any
witness testimony.  As the State’s first
witness, Lawson testified that he was married to the complainant on the day of
her death, and he identified a photograph of the complainant.  After the conclusion of Lawson’s testimony, appellant
objected to Lawson remaining in the courtroom because the rule had been invoked
and Lawson did not fall within any exception. 
The judge overruled the objection and allowed Lawson to remain in the courtroom.  Trial counsel later re-urged the objection
and moved to exclude Lawson, noting that trial counsel “noticed that [] Lawson was
in the witness waiting room sitting with one of the officers who [he] believe[s]
has already testified” but could not say that Lawson was having a conversation
with the officer or not.  Appellant’s
position was that Lawson could have been re-called or called to testify during
the punishment stage, and, therefore, he should not have been allowed to listen
to the testimony of the other witnesses. 
The trial court denied appellant’s motion and instructed the State to
ensure that Lawson did not “talk[] to the other witnesses.”  

Neither party re-called Lawson during
the guilt phase of the trial nor did they call him during the punishment
phase.  Lawson did not testify as to the
events and had no personal knowledge of the details of the collision.  Appellant has failed to show that Lawson’s
testimony contradicted the testimony of a witness from the opposing side or
corroborated testimony of a witness he had conferred with or heard.  See id.  Lawson simply testified as to the identity of
the complainant.  Accordingly, we hold that
the trial court did not abuse its discretion in allowing Lawson to remain in
the courtroom.  

We overrule appellant’s third point
of error.

Ineffective Assistance of Counsel

          In
his fourth point of error, appellant argues that the trial court erred in
denying his new-trial motion because his trial counsel did not adequately
inform him of the “legal consequences of certain findings.”

The standard of review for evaluating claims of ineffective
assistance of counsel is set forth in Strickland
v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).  Strickland
generally requires a two-step analysis in which an appellant must show that (1)
counsel’s performance fell below an objective standard of reasonableness and
(2) but for counsel’s unprofessional error, there is a reasonable probability
that the result of the proceedings would have been different.  Id.
at 687–94, 104 S. Ct. 2064–2068; Thompson
v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).  A reasonable probability is a “probability
sufficient to undermine confidence in the outcome.”  Strickland,
466 U.S. at 694, 104 S. Ct. at 2068.  In
reviewing counsel’s performance, we look to the totality of the representation
to determine the effectiveness of counsel, indulging a strong presumption that
his performance falls within the wide range of reasonable professional
assistance or trial strategy.  Thompson, 9 S.W.3d at 813.  The record must affirmatively support the
alleged ineffectiveness.  Id.

Generally, we review a trial court’s denial of a motion for a
new trial under an abuse of discretion standard.  Salazar
v. State, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001).  However, the United States Supreme Court has
explicitly held that “both the performance and prejudice components of the
ineffectiveness inquiry are mixed questions of law and fact.”  Strickland,
466 U.S. at 698, 104 S. Ct. at 2070; see
also Williams v. Taylor, 529 U.S. 362, 419, 120 S. Ct. 1495, 1526 (2000)
(Rehnquist, C.J., concurring) (“While the determination of ‘prejudice’ in the
legal sense may be a question of law, the subsidiary inquiries are heavily
factbound.”).  Accordingly, “where the
trial court ‘is not in an appreciably better position’ than the appellate court
to decide the issue, the appellate court may independently determine the issue
while affording deference to the trial court’s findings on subsidiary factual
questions.”  Villarreal v. State, 935 S.W.2d 134, 139 (Tex. Crim. App. 1996)
(McCormick, P.J., concurring) (citing Miller
v. Fenton, 474 U.S. 104, 110–17, 106 S. Ct. 445, 450–53 (1985)); see Kober v. State, 988 S.W.2d 230, 233
(Tex. Crim. App. 1999).  Yet, the trial
court remains in the best position to “evaluate the credibility” of the witnesses
and resolve such conflicts.  Kober, 988 S.W.2d at 233; see Strickland, 466 U.S. at 698, 104 S. Ct.
at 2070.  The trial court can choose to
believe or disbelieve all or any part of the witnesses’ testimony.  See
Johnson, 169 S.W.3d 223, 239–40 (Tex. Crim. App. 2005); Kober, 988 S.W.2d at 233.

After trial, appellant filed his new-trial motion, in which
he argued that his trial counsel had provided him ineffective assistance
because counsel had failed to explain
the consequences of the jury’s affirmative finding that he had used a deadly
weapon in committing the offense.  At
the hearing on his motion, the trial court received as evidence appellant’s
testimony and the affidavit of his trial counsel.  Appellant testified that “only
after the jury sent a note back to the court concerning a deadly weapon did
[trial counsel] say to [appellant] that ‘this is just a formality, it doesn’t
mean anything.’”  Appellant explained
that had he known the consequences of a deadly weapon finding he “could have
made a more informed decision” and he would have accepted the District
Attorney’s plea bargain offer of confinement for eight years.  

          In
his affidavit, appellant’s trial counsel testified that appellant “repeatedly
declined to consider or request the case be negotiated to any term of
imprisonment” and that appellant “consistently indicated he would only agree to
a plea of guilty without trial if the agreed punishment provided community
supervision.”  He further explained that
he reviewed the indictment with appellant, advised him that a finding that a
deadly weapon had been used during the commission of the offense would make him
ineligible for consideration of parole until he served at least one-half of his
sentence in prison, and advised him that without an affirmative finding of deadly
weapon, he would be eligible for parole when he served twenty-five percent of
his sentence.  Counsel further advised
appellant that if found guilty of intoxication manslaughter by a jury, the jury
would almost certainly make an affirmative finding that a deadly weapon had
been used during the commission of the offense. 
Counsel also stated that the State had offered appellant a plea offer of
confinement for eight years and appellant “quickly rejected this offer.”

A failure by trial counsel to advise a criminal defendant
about legal concepts that may affect his decision to accept or reject a plea
offer can constitute deficient performance. 
See Ex parte Battle, 817
S.W.2d 81, 84 (Tex. Crim. App. 1991); Ex
parte Gallegos, 511 S.W.2d 510, 513 (Tex. Crim. App. 1974).  Here, however, the testimony of appellant and
his trial counsel conflict regarding counsel’s discussions with appellant about
the consequences of a deadly weapon finding and why appellant rejected the
State’s plea offer of confinement for eight years.  The trial court, as fact finder, was the sole
judge of the credibility of the testimony of appellant and his trial counsel
and the weight to be given to their testimony, and it could have rejected
appellant’s testimony and accepted that of counsel.  See
Johnson, 169 S.W.3d at 239–40; Kober,
988 S.W.2d at 233.  Consequently, the
trial court could have concluded that trial counsel did discuss with appellant
the consequences of an affirmative finding of a deadly weapon.  The trial court could have further concluded
that appellant was not willing to take a plea offer involving any term of
imprisonment.  In sum, the trial court
could have reasonably concluded that appellant rejected the State’s plea offer,
not because trial counsel failed to adequately explain pertinent legal concepts
to him, but because the State did not offer community supervision.  Accordingly, we hold that appellant did not
establish that his trial counsel’s performance fell below an objective standard
of reasonableness and the trial court did not err in denying appellant’s new-trial
motion.  See Strickland, 466 U.S. at 687–94,
104 S. Ct. 2064–2068; Thompson, 9
S.W.3d at 813.

We overrule appellant’s fourth
point of error.

Conclusion

We affirm the judgment of the trial
court.  

 

 

                                                                   Terry
Jennings

                                                                   Justice


 

Panel
consists of Justices Jennings, Alcala, and Sharp.

Do
not publish.  Tex. R. App. P. 47.2(b).











[1]           See
Tex. Penal Code Ann. § 49.08
(Vernon Supp. 2010). 





[2]           See
Tex. R. Evid. 614.





[3]           See
Tex. Code Crim. Proc. Ann. art. 49.02
(Vernon 2006).  

 





[4]           See
29 U.S.C. § 1181.





[5]           Chapter 49 includes the offense of
intoxication manslaughter.  See Tex.
Penal Code Ann. § 49.08.