**Ameer Nuffez MOHAMMED, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–02–00179–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 23, 2003.

---

Frances Northcutt, Houston, TX, Robert Morrow, Hocker & Morrow, Boyd & Mathews, Spring, TX, for Appellant.

Charles A. Rosenthal, Jr., District Attorney–Harris County, Peyton Z. Peebles, III, Assistant District Attorney, William J. Delmore, III, Chief Prosecutor, Appellate Division, Houston, TX, for Appellee.

Panel consists of Justices TAFT, JENNINGS, and HANKS.

## OPINION

TIM TAFT, Justice.

A jury found appellant, Ameer Nuffez Mohammed, guilty of the offense of capital murder. Because the State did not seek the death penalty, the trial court automatically assessed appellant's punishment at confinement for life. We determine whether the trial court erred (1) in denying appellant's request to include instructions on the lesser-included offenses of felony murder and aggravated kidnapping in the jury charge and (2) in denying appellant's request to voir dire the prospective jurors on the lesser-included offenses of felony murder and kidnapping. We also determine whether appellant preserved his complaint that the trial court did not include an instruction on the lesser-included offense of robbery in the jury charge. We affirm.

## Facts

In October 2000, appellant approached Ulises Arteaga and asked him to participate in the robbery of appellant's sister, in order to steal money from her home safe. Arteaga was reluctant, but he introduced appellant to two other men, Leo Fuentes and Patrick Selby, who were willing to help with the robbery. On the morning of October 17, 2000, appellant met with Arteaga, Fuentes, and Selby at appellant's shop and promised each $5,000 for helping rob his sister, the complainant. Appellant asked Arteaga and Selby to purchase duct tape before robbing the complainant, which they did.

The four men drove to a corner store near the complainant's house, where appellant and Fuentes got out. Selby and Arteaga were to stand lookout while appellant and Fuentes robbed the complainant. Arteaga and Selby expected the robbery to last only 10 or 15 minutes, but it lasted almost two hours. After the complainant refused to give appellant an effective combination to her safe, he got angry and began to cut her. Appellant and Fuentes then bound the complainant's wrists and ankles with duct tape, placed her in the trunk of her own car, and drove the car back to appellant's shop.

At the shop, appellant again tried to get the complainant to reveal the safe combination, but she still refused. Appellant got angry and kicked the complainant in the face while she was lying bound and gagged on the floor. Appellant and Fuentes then began to burn the complainant's nose and toes with a lighter. Next, appellant and Fuentes bound the complainant's wrists and feet with wire from the shop. Appellant stated that he had to kill the complainant. Appellant placed a plastic bag over the complainant's head, pressed the air out of the bag, and, with the help of Fuentes, secured it with duct tape around

the complainant's neck. After five minutes, appellant pinched the complainant with pliers, and she did not respond. Appellant then placed the complainant in the trunk of her car and drove the car to a vacant lot, where he abandoned it.

Houston Police Department Officer Breaux found the complainant's abandoned car on October 28, 2000. The complainant's decomposed body, bound with gray duct tape, was found in the trunk. The cause of death was ruled to be asphyxia from either the plastic bag or the duct-tape gag on her mouth.

Houston Police Department detectives followed a CrimeStoppers tip to Arteaga, who gave a statement to the police. Based on the information provided by Arteaga, the officers were able to secure an arrest warrant for appellant. Michael Lyons of the Houston Police Department Forensic Firearms Laboratory was able to match the wire that bound the complainant's arms and legs to a spool of wire found in appellant's shop.

Appellant made three statements to the police. In them, he denied any intent to hurt the victim, but admitted that he assisted Fuentes, Artaega, and Selby by telling them what time to find the complainant home alone, by revealing where to find items in the complainant's home, by helping them to bind the complainant's legs with duct tape, and by opening the door of the shop to let them out once they had the complainant in the trunk.

### Lesser–Included Offenses

In his first three points of error, appellant contends that the trial court reversibly erred in denying appellant's request for the jury to be instructed on the lesser-included offenses of felony murder, aggravated kidnapping, and robbery. The indictment alleged that appellant intentionally caused the death of the complainant by suffocating her with a plastic bag while in the course of committing or attempting to commit either the kidnapping or the robbery of the complainant.

■ The Court of Criminal Appeals has adopted a two-prong test to determine if a jury must be charged on a lesser-included offense. *See Aguilar v. State*, 682 S.W.2d 556, 558 (Tex.Crim.App.1985). First, the requested offense must be a lesser-included offense according to the definition set forth in the Code of Criminal Procedure. *Creel v. State*, 754 S.W.2d 205, 211 (Tex. Crim.App.1988). Under the Code, an offense is a lesser-included offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

TEX.CODE CRIM. PROC. ANN. art. 37.09 (Vernon 2003).

■ Second, there must be some evidence that, if the accused is guilty, he is guilty only of the lesser-included offense. *Hernandez v. State*, 819 S.W.2d 806, 813 (Tex.Crim.App.1991). We must review all evidence presented at trial to make this determination. *Rousseau v. State*, 855 S.W.2d 666, 673 (Tex.Crim.App.1993). If the evidence raises the issue of a lesser-included offense, a jury charge must be given based on that evidence "whether produced by the State or the defendant

and whether it be strong, weak, unimpeached, or contradicted." *Id.* at 672 (quoting *Bell v. State*, 693 S.W.2d 434, 442 (Tex.Crim.App.1985)).

## A. Felony Murder

■ In appellant's first point of error, he contends the trial court erred in denying his requested jury instruction on the lesser-included offense of felony murder. Felony murder is a lesser-included offense of capital murder as charged here because it meets the requirements of article 37.09(1). TEX.CODE CRIM. PROC. 37.09(1); *Creel v. State*, 754 S.W.2d 205, 211 (Tex. Crim.App.1988). The only difference between capital murder and felony murder is that capital murder requires the specific intent to kill, while felony murder requires only the intent to commit the underlying felony. *Santana v. State*, 714 S.W.2d 1, 9 (Tex.Crim.App.1986). Therefore, the first step of the *Aguilar* test is satisfied.

Consequently, appellant must point to some evidence that he could have been found guilty of only felony murder and not of capital murder. As discussed previously, capital murder requires a person intentionally or knowingly to cause the death of another. TEX. PEN.CODE ANN. § 19.03(a) (Vernon 2003). Felony murder occurs when an individual "commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual." *Id.* § 19.02(b)(3) (Vernon 2003).

■ The only evidence at trial of an act that was dangerous to human life and that caused a death was appellant's placing a plastic bag over the victim's head to suffocate her. This is evidence of an intentional killing. Conversely, appellant stated that he was never aware of the presence or use of a plastic bag during the commission of the crime. Thus, the evidence showed either that appellant committed an intentional killing or that appellant was completely unaware of the act that subsequently caused the victim's death. According to appellant's version of the crime, he could not be found guilty of felony murder, even as a party, because he denied any complicity with, or knowledge of, the commission of an act clearly dangerous to human life that caused the death of the complainant, namely, placing the plastic bag over the complainant's head. Even under some disjointed combination of the State's and appellant's versions of the crime, and with or without the law of parties, there is no evidence that appellant intended to commit only an act clearly dangerous to human life that caused the death of the complainant. Given this state of the evidence, a rational jury could not have found appellant guilty of only felony murder and not of capital murder.

Appellant relies upon *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), in which the defendant's testimony that his co-defendant unexpectedly struck and killed an 80–year–old robbery victim raised the issue of the lesser-included offense of felony murder. *Id.*, 447 U.S. at 629–30, 100 S.Ct. at 2385–86. However, the definition of felony murder is different in Alabama. Alabama requires only that the defendant, or another participant, cause the death of any person during a felony such as robbery. *See* ALA.CODE ANN. § 13A–6–2(a)(3) (Michie 1994). Alabama does not require that the defendant commit an act clearly dangerous to human life that causes the death of the complainant, as does Texas. *See* TEX. PEN.CODE ANN. § 19.02(b)(3) (Vernon 2003). Thus, in Texas, it takes facts like those in *Ross v. State*, 861 S.W.2d 870 (Tex.Crim.App.

1992), for a defendant charged with capital murder to be entitled to submission of the lesser-included offense of felony murder. In *Ross*, the defendant admitted shooting the complainant, but claimed that the shooting did not happen intentionally. *Id.* at 872. The defendant asserted that the gun just went off as he was shoving the complainant with the gun, which was held near the man's shoulder and pointed toward his head. *Id.* Thus, Ross admitted committing an act clearly dangerous to human life that caused the death of the complainant, but denied intent to cause the death. Here, appellant does not admit, nor is there evidence from any other source, that appellant committed, or intended that another person commit, an act clearly dangerous to human life that caused the death of the complainant. Accordingly, the trial court did not err in denying appellant's request for a jury instruction on the lesser-included offense of felony murder.

We overrule point of error one.

## B. Aggravated Kidnapping

 In his second point of error, appellant contends that the trial court erred in denying his requested jury instruction on the lesser-included offense of aggravated kidnapping. Aggravated kidnapping does not pass the first prong of the *Aguilar* test. The focus of the first prong of the test is on the language in article 37.09(1), which states that a lesser-included offense is one "established by proof of the same or less than all the facts *required to establish the commission of the offense charged.*" TEX.CODE CRIM. PROC. ANN. art. 37.09(1) (Vernon 2003) (emphasis added); *Jacob v. State*, 892 S.W.2d 905, 908 (Tex.Crim.App. 1995). One paragraph of the indictment charged that appellant "did then and there unlawfully, while in the course of committing and attempting to commit the KIDNAPPING of SHARIFFA KISSOON, intentionally cause the death of SHARIFFA KISSOON...." Although the indictment charged only kidnapping, appellant sought a jury charge on the offense of aggravated kidnapping. Clearly, the offense of aggravated kidnapping requires proof of an additional element that kidnapping does not.[1] Aggravated kidnapping thus requires proof of *more* than all the facts required to prove the offense charged, rather than "the same or less than all the facts," as stated in article 37.09(1). The offense charged in the present case does not require proof of aggravated kidnapping; thus, aggravated kidnapping cannot be a lesser-included offense. *See Ramos v. State*, 981 S.W.2d 700, 701 (Tex.App.-Houston [1st Dist.] 1998, pet. ref'd) (finding that assault is not a lesser-included offense of aggravated sexual assault or indecency with a child). Even though the State presented some evidence that there was an aggravated kidnapping, in that a

---

1. A person commits the offense of "kidnapping" if he "intentionally or knowingly abducts another person." TEX. PEN.CODE ANN. § 20.03(a) (Vernon 2003).

 A person commits the offense of "aggravated kidnapping" if he "intentionally or knowingly abducts another person with the intent" to
 (1) hold him for ransom or reward;
 (2) use him as a shield or hostage;
 (3) facilitate the commission of a felony or the flight after the attempt or commission of a felony;
 (4) inflict bodily injury on him or violate or abuse him sexually;
 (5) terrorize him or a third person; or
 (6) interfere with the performance of any governmental or political function. *Id.* § 20.04(a) (Vernon 2003).
 A person also commits the offense of "aggravated kidnapping" if he "intentionally or knowingly abducts another person and uses or exhibits a deadly weapon during the commission of the offense." *Id.* § 20.04(b) (Vernon 2003).

deadly weapon was used to commit the kidnapping, the deadly weapon was not required to prove the capital murder, as alleged. This Court has held that the "facts required" language of article 37.09(1) refers to the evidence required to prove the offense as alleged, not the evidence presented by the State. *See Ramos*, 981 S.W.2d at 701; *see also Jacob*, 892 S.W.2d at 908. Therefore, the first prong of the *Aguilar* test is not satisfied.

We overrule point of error two.

## C. Robbery

 In his third point of error, appellant contends that the trial court erred in denying his requested jury instruction on the lesser-included offense of robbery. However, the record reflects that appellant requested a jury charge on aggravated robbery, not robbery.[2] As for robbery, appellant did not request a charge on robbery at trial. When the evidence supports a lesser-included offense, defense counsel's failure to request a charge or to object to an omission of the charge constitutes waiver. *Kinnamon v. State*, 791 S.W.2d 84, 96 (Tex.Crim.App.1990), *overruled on other grounds, Cook v. State*, 884 S.W.2d 485, 491 (Tex.Crim.App.1994). Therefore, appellant waived any right to submission of

the lesser-included offense of robbery by not requesting it.

We overrule point of error three.

### Voir Dire

In his fourth, fifth, and sixth points of error, appellant contends that the trial court erred in denying appellant's request to voir dire the prospective jurors on the lesser-included offenses of felony murder, kidnapping, and robbery. Appellant notes that the trial court denied questioning about the·lesser-included offenses, as well as the punishment for them, on the basis that no evidence would be presented raising the lesser-included offenses. Appellant claims that, when, as here, the evidence raises the lesser-included offenses, restriction of voir dire questioning concerning them constitutes reversible error. *See Santana*, 714 S.W.2d at 10.

The record reflects that, prior to beginning voir dire, defense counsel stated:

> Yes, Your Honor. We've indicated to the Court our desire to voir dire the jury on the lesser included felony murder and lesser offenses of kidnapping and robbery based on the evidence that there is, that there is reasonable doubt as to capital murder. As to the defendant's guilt of a lesser offense, we'd like to talk to them about what the punishment is for those offenses.

2. Appellant's request was as follows:

> We're going to make a request, your Honor, that the lesser included offenses of, one, *aggravated robbery;* two, aggravated kidnapping, along with felony murder be included in the Court's charge. I think there's sufficient evidence presented to this jury to give them the option of finding Mr. Mohammed guilty of the lesser included offenses, which would be included in the offense of capital murder.
>
> We at least have through his statement, at the very least, the denial of his involvement in the death of Ms. Kissoon, and acknowledges by way of statements that were pre-

> sented some involvement beforehand in terms of possible robbery or taking property from Ms. Kissoon at her home. There's definitely the evidence before this jury, a denial on the part of Mr. Mohammed, that he knew or had knowledge or anticipated that the death of Ms. Kissoon would take place.
>
> Since that evidence is before this jury, the jury has a right to consider the lesser offenses of either *aggravated robbery,* kidnapping, or felony murder. We're requesting those lesser includeds be included in the charge and presented to the jury.
> (Emphases added.)

The trial court restricted voir dire with regard to lesser-included offenses, as well as punishment for the same. We hold that the trial court's restriction on voir dire questioning was proper in this case.

The State correctly asserts that appellant failed to preserve these points of error by not presenting particular, proper questions. The State relies on *Sells v. State,* 121 S.W.3d 748, 754–57 (Tex.Crim.App.2003). In *Sells,* the trial court refused to allow questioning about parole law. *Id.,* 121 S.W.3d at 755. Sells had presented four specific questions, which the trial court denied, and Sells complained of the trial court's explicitly ruling that no questions regarding parole law would be permitted. *Id.,* 121 S.W.3d at 754–55. The Court of Criminal Appeals held that, to preserve error, an appellant must show that he was prevented from asking *particular* questions that were proper. *Id.,* 121 S.W.3d at 755. "That the trial court generally disapproved of an area of inquiry from which proper questions could have been formulated is not enough because the trial court might have allowed the proper question had it been submitted for the court's consideration." *Id.,* 121 S.W.3d at 756.

■ We can see no meaningful distinction between this case and *Sells.* Because appellant did not show that he was prevented from asking a particular, proper question, he failed to preserve error for review.

We overrule appellant's fourth, fifth, and sixth points of error.

### Conclusion

We affirm the judgment of the trial court.