**Affirmed and Memorandum Opinion filed March 15, 2012.**



In The

# Fourteenth Court of Appeals

### NO. 14-10-00713-CR

### THEODORE CHARLES SCHMIDT, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 182nd District Court
Harris County, Texas
Trial Court Cause No. 1204964**

# MEMORANDUM OPINION

Appellant Theodore Charles Schmidt appeals his conviction of capital murder, challenging the sufficiency of the evidence to support his conviction and the constitutionality of his life sentence without the possibility of parole. He also argues that the trial court should have included an instruction for aggravated kidnapping as a lesser-included offense in the jury charge. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Law enforcement officers responded to a call from a trucker who had discovered the body of a young woman, complainant Sabrina Pina, in a ditch along a roadway. An

officer observed that her wrists were bound together with duct tape and duct tape was wrapped in multiple, separate layers around her head, covering the eyes. The complainant had suffered a single gunshot wound to the back of her head. At the scene, investigators recovered a 9-millimeter Winchester Luger spent shell cartridge positioned six feet from the complainant's body.

On the night before the complainant's body was discovered, the complainant's family had filed a missing-person report with authorities after she failed to show up for a family function. Investigators learned that the complainant had been shopping at a department store on the afternoon of her disappearance. The complainant's vehicle remained in the store's parking lot, but she never returned home that evening. Inside the vehicle, investigators located a number of receipts from nearby stores and a fast food restaurant along with purchased merchandise.

A latent fingerprint examiner discovered one identifiable fingerprint on the sticky part of the duct tape that was the under layer of duct tape wrapped around the complainant's head. Investigators traced the fingerprint to appellant, prepared a "probable cause" affidavit, and obtained a search warrant and arrest warrant for appellant. Officers executed the warrants and arrested appellant at his apartment. Officers recovered the following items from appellant's apartment: a receipt bearing appellant's name for purchase of a 9-millimeter Beretta handgun, a box containing 9-millimeter Winchester Luger bullets, and a roll of duct tape found in the garage. Officers also collected DNA samples from the apartment. Officers took a vehicle that was in appellant's possession[1] to process it for possible evidence. None of the complainant's fingerprints were found in appellant's vehicle.

In the course of the investigation, officers obtained video footage from a retail store, depicting the complainant's vehicle entering and exiting those premises; the

---

[1] The record reflects that the vehicle belonged to appellant's sister, but that appellant had borrowed the vehicle during the time period in question.

2

complainant was alone. Employees from a nearby fast food restaurant testified that the complainant was alone when she ordered food. Other video footage from the department store depicted the complainant entering the department store. Investigators also saw appellant in the store's video footage and observed that he wore a black ball cap, a black jacket, a blue shirt, jeans, and dark-colored boots. The video reflects that appellant entered the store several minutes behind the complainant; as appellant stood in line to purchase an item, he repeatedly looked back into the area of the store where the complainant was shopping. In the video, appellant can be seen exiting the store and walking to a particular area of the parking lot outside of the scope of the camera's lens; the complainant can be seen leaving the store several minutes later and walking to the same vicinity of the parking lot, where her vehicle was later found by family members that evening.

After reviewing the video footage, investigators obtained a second search warrant for appellant's apartment in an effort to locate the clothing appellant wore as shown in the video. In executing this search warrant, officers recovered clothing they believed to be the clothing appellant was wearing when his image was captured by the store's video camera. The clothing was found in appellant's garage. A dog's hair was found on the jacket and shirt that investigators seized from appellant's apartment; DNA testing revealed that the dog hair found on appellant's clothing, and also on the complainant's clothing, was identical to the hair and DNA samples taken from the complainant's pet, a dachshund.

A medical examiner performed an autopsy of the complainant's body and determined that the complainant suffered a fatal gunshot wound to her head. The medical examiner recovered a fragmented bullet lodged in the complainant's skull. The medical examiner took DNA samples from the complainant's body and underneath her fingernails. DNA samples taken from the complainant's left breast revealed that appellant could not be excluded as a possible "minor contributor" of the DNA; the

3

complainant's husband was excluded as a source of the DNA. The DNA sample taken from the complainant's fingernails was traced to appellant as a possible "minor contributor."

The results of one DNA sample retrieved from a toilet seat in appellant's apartment revealed the complainant was a possible "minor contributor" of the mixture of DNA; this particular DNA sample revealed that two individuals contributed DNA and appellant was the "major contributor." One expert theorized that one person's DNA could be found in another person's sink by indirect transfer such as washing one's hands after having contact with another. A small piece of paper attached to the duct tape that bound the complainant's wrists yielded a mixture of DNA in which neither the complainant nor appellant could be excluded as possible contributors. The tape that bound the complainant's wrists revealed a mixture of DNA from at least three people; the complainant was the major contributor of the DNA, but appellant could not be excluded as a minor contributor of the DNA along with an unidentified male contributor. The tape that bound the complainant's head revealed appellant's fingerprint; but, DNA evidence reflects an unknown male as a source of DNA.

Appellant was charged with the offense of capital murder, to which he pleaded "not guilty." At trial, several investigators testified, along with the medical examiner and others who handled and tested physical evidence.

The trial record reflects that appellant and the complainant both graduated from the same local high school in the same year. Following graduation, they both lived within a few blocks of each other in the Austin area and attended classes at the same community college on the same campus at the same time. According to one high school classmate, appellant admitted seeing the complainant in Austin after graduation and appeared disturbed that the complainant acted as if she did not know him. Investigators learned that appellant told another classmate that he had moved to Austin to pursue an unnamed female. A waitress who knew appellant from a local establishment testified that

4

one day before his arrest, appellant asked her to travel around the country with him the following day and expressed a desire to move to Europe.

Both appellant's father and appellant's former roommate testified that appellant owned a 9-millimeter handgun and both men had been shooting with appellant before. When the roommate moved out of the apartment, several months before the offense, appellant still had possession of the firearm. Just before his arrest, appellant contacted the former roommate and others by email inquiring whether they had heard that a high school classmate, the complainant, had been kidnapped and murdered.

A firearms examiner could not determine whether the bullet fragment found in the complainant's skull was fired from the same firearm as the cartridge found at the scene near the complainant's body. The expert opined that the characteristics of both the recovered bullet and the spent cartridge were consistent with being fired from a 9-millimeter Beretta handgun, such as the firearm reflected on the receipt recovered from appellant's apartment. Although appellant's fingerprints were found on the roll of duct tape recovered from his apartment, crime lab scientists were unable to match the edge of the duct tape taken from the complainant's body to the roll of duct tape found at the apartment. One expert testified that the perpetrator could have torn away parts of the duct tape after binding the complainant's head and wrists to prevent the edges of the tape from being matched to the roll of duct tape. An expert also opined that once the perpetrator realized that his fingerprint was left on the duct tape, the perpetrator, before tearing the tape, attempted to use paper to prevent transferring more fingerprints to the duct tape that bound the complainant's head and wrists. According to one expert's physical and chemical comparison, the duct tape found on the complainant's body could have come from the roll of duct tape found in appellant's garage or from any other roll of tape with the same characteristics.

5

The jury found appellant guilty as charged. Appellant was sentenced to a life of confinement. Appellant's motion for new trial was denied. Appellant now appeals his conviction.

## SUFFICIENCY OF THE EVIDENCE

In his first issue, appellant challenges the sufficiency of the evidence to support a conviction for capital murder.

A person commits the offense of capital murder if that person intentionally or knowingly causes the death of an individual and intentionally commits murder in the course of committing or attempting to commit kidnapping. *See* Tex. Penal Code Ann. §§ 19.03(a)(2), 19.02(b)(1) (West 2011). A person commits the offense of kidnapping if that person intentionally or knowingly abducts another person. *See id.* § 20.03(a) (West 2011). The term "abduct" means to restrain a person with the intent to prevent liberation by either (1) secreting or holding the person in a place where the person is unlikely to be found, or (2) using or threatening to use deadly force. *See id.* § 20.01(2). To "restrain" means to restrict a person's movements without consent so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining that person. *See id.* § 20.01(1).

In evaluating a sufficiency challenge, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The trier of fact "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The trier of fact may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State*, 707 S.W.2d 611, 614

6

(Tex. Crim. App. 1986). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

Appellant's image was captured on video entering the same store that the complainant had just entered; appellant left the store before the complainant. Video footage shows that both the complainant and appellant exited the store and walked to the same vicinity of the parking lot, which was not within the scope of the camera's lens. The record reflects that the complainant's vehicle remained in the store's parking lot, which suggests that she was abducted at some point between walking in the store parking lot and reaching her vehicle. From this evidence a jury rationally could infer that appellant had the opportunity to abduct the complainant. *See Woodruff v. State*, 330 S.W.3d 709, 723 (Tex. App.—Texarkana 2010, pet. ref'd) (concluding evidence was sufficient to support conviction for capital murder based in part on accused's opportunity to commit the murders).

The physical evidence also supports the conviction. Appellant's fingerprint was identified on a piece of the duct tape that bound the complainant's head. *See Clayton v. State*, 235 S.W.3d 772, 779 (Tex. Crim. App. 2007) (providing that a fingerprint is not direct evidence of an accused's killing a complainant, but that the fingerprint serves as circumstantial evidence and should not be considered in isolation). Appellant was identified as a source of DNA taken from underneath the complainant's fingernails and on the complainant's left breast. DNA evidence from the complainant was discovered in a sample taken from a toilet seat in appellant's apartment. Dog hair found on appellant's clothing and on the complainant's clothing matched the hair belonging to the complainant's dog.

Appellant claims there is no direct evidence that appellant shot the complainant, no witnesses, and no evidence of appellant's desire to kill the complainant. Identity and criminal culpability may be proved through either direct or circumstantial evidence, coupled with all reasonable inferences from the evidence. *See Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009). Circumstantial evidence is as probative as direct evidence in establishing guilt; circumstantial evidence alone may be sufficient to support a conviction. *See Clayton*, 235 S.W.3d at 778. It is not necessary that every fact point directly and independently to the accused; rather circumstantial evidence is sufficient if warranted by the combined and cumulative force of all the incriminating circumstances. *See Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993).

Although motive is not an element of the offense, motive may serve as a circumstance indicative of guilt. *See Clayton*, 235 S.W.3d at 781. The record reflects that the complainant and appellant graduated from the same high school in the same year. Following graduation, the complainant moved to Austin to take classes at a university and at a community college. Appellant moved to Austin at the same time and lived within several blocks of the complainant. While in Austin, the complainant and appellant took courses at the same local community college on the same campus at the same time. One high-school classmate testified that appellant appeared disturbed that he had seen the complainant in Austin and she appeared not to know him. Additionally, the record reflects that at the time of the offense, another store of the same retail chain was located much closer to appellant's apartment than the store where the complainant was last seen. This circumstantial evidence supports the State's theory at trial that appellant was following or "stalking" the complainant before her disappearance. *See id.* (concluding that circumstantial evidence supported State's theory of motive).

The fragmented bullet found lodged in the complainant's skull and the cartridge found near her body both showed characteristics that were consistent with being fired from a 9-millimeter Beretta handgun. The record reflects that appellant owned a Beretta

9-millimeter handgun and that at the time appellant's former roommate moved out several months before the offense, appellant still had that firearm in his possession. Although much of appellant's gear for using the firearm was found at his apartment, including ammunition, earmuffs, grips, and a gun case, the firearm was never located. *See Johnson*, 871 S.W.2d at 188, 190 (addressing circumstantial evidence that gun cleaning kits for a .25 caliber firearm and a .38 caliber firearm were found in the accused's home, even though the actual firearms, themselves, were not found in the accused's home). The fired cartridge found near the complainant's body was the same brand of cartridges recovered from appellant's apartment. From this evidence, a jury reasonably could conclude that appellant had access to the firearm to commit the offense. *See Woodruff*, 330 S.W.3d at 723 (concluding evidence was sufficient to support conviction for capital murder based in part on accused's access to a firearm).

Cell-phone records show no incoming or outgoing calls from appellant's phone for several hours[2] after appellant was seen exiting the store until the next morning after the complainant's body was discovered. A jury rationally could infer from the circumstantial evidence that appellant had sufficient time to commit the murder. *See id.* at 719–20, 723 (involving cell phone records as evidence that accused had sufficient time to commit murders). The record reflects that one day before appellant was arrested, he indicated a desire to travel the country and ultimately move to Europe. A factfinder may draw an inference of guilt from the circumstance of flight. *See id.* at 780.

On appeal, appellant points to DNA evidence on the duct tape that bound the complainant's head and wrists suggesting that an unknown male may have shot the complainant. But the jury rejected appellant's theory of an additional unknown male participant in the offense. It was the role of the jury, as fact finder, to assess the credibility and demeanor of witnesses and determine the weight of the evidence. *See Clayton*, 235 S.W.3d at 779.

---

[2] Appellant called his sister twice from his cell phone several hours after he was seen exiting the store. Each call lasted roughly one minute.

9

The jury reasonably could have inferred that appellant abducted the complainant from the store parking lot, and that this kidnapping served as the underlying offense for capital murder. *See* Tex. Penal Code Ann. § 20.03(a); *see also Johnson*, 871 S.W.2d at 191. Likewise, considering the cumulative force of the incriminating circumstantial evidence, a rational jury could have found beyond a reasonable doubt that appellant was responsible for killing the complainant. *See Johnson*, 871 S.W.2d at 191; *Woodruff*, 330 S.W.3d at 723. To the extent appellant argues that the evidence supports only a conviction for aggravated kidnapping, his arguments lack merit. Viewing the evidence in the light most favorable to the verdict, we conclude the evidence is sufficient to support a conviction for capital murder, as charged. *See Woodruff*, 330 S.W.3d at 723. We overrule appellant's first issue.

### DENIAL OF REQUEST FOR LESSER-INCLUDED-OFFENSE INSTRUCTION

In his second issue, appellant claims the trial court erred in denying his timely requested jury-charge instruction for aggravated kidnapping as a lesser-included offense of capital murder.

An offense is a lesser-included offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the charged offense only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

Tex. Code. Crim. Proc. Ann. art. 37.09 (West 2006).

A defendant is entitled to every defensive issue raised by the evidence. *Id.* art. 36.14 (West 2007). To warrant a jury-charge instruction on a lesser-included offense, a defendant must demonstrate that (1) the elements of the lesser offense are contained

10

within the proof necessary to establish the charged offense as pleaded in the State's indictment, and (2) the record contains some evidence by which a rational jury could conclude that if the accused is guilty, the accused is guilty of only the lesser offense and not the greater offense. *See Hall v. State*, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007) (applying "pleadings approach" as sole test in first step in determining whether a party is entitled to a lesser-offense instruction).

As reflected in the indictment, appellant was charged with intentionally causing the complainant's death while in the course of committing or attempting to commit kidnapping of the complainant. *See* Tex. Penal Code Ann. § 19.03(a)(2). Kidnapping is a lesser-included offense of the capital murder charge against appellant. *See id.*; *see also Rodriguez v. State*, 146 S.W.3d 674, 677 (Tex. Crim. App. 2004). But the offense of aggravated kidnapping, for which appellant requested a jury instruction as a lesser-included offense, requires proof of an additional element that kidnapping does not. *Compare* Tex. Penal Code Ann. § 20.03(a) (providing that a person commits the offense of kidnapping if that person "intentionally or knowingly abducts another person"), *with* Tex. Penal Code Ann. § 20.04(a), (b) (providing that a person commits the offense of aggravated kidnapping if the person "intentionally or knowingly abducts another person with the intent" to commit a host of other actions or "intentionally or knowingly abducts another person and uses or exhibits a deadly weapon in the commission of the offense"); *see Mohammad v. State*, 127 S.W.3d 163, 168 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). Aggravated kidnapping requires proof of more than all the facts required to prove the offense charged rather that "the same or less than all the facts," as contemplated by article 37.09(1). *See Mohammad*, 127 S.W.3d at 168. The elements of the aggravated kidnapping are not contained within the proof necessary to establish the charged offense as pleaded in the State's indictment. *See Hall*, 225 S.W.3d at 535; *see also Mohammad*, 127 S.W.3d at 168. Therefore, aggravated kidnapping cannot be a lesser-included

11

offense.[3]  *See id.*  The trial court did not err in denying appellant's request. We overrule appellant's second issue.

## CONSTITUTIONAL CHALLENGE TO LIFE SENTENCE WITHOUT THE POSSIBILITY OF PAROLE

When, as in this case, an accused is found guilty in a capital felony case in which the State does not seek the death penalty, the judge shall sentence the defendant to life imprisonment without the possibility of parole.  *See* Tex. Code Crim. Proc. Ann. art. 37.071 § 1 (West 2007); *see also* Tex. Penal Code Ann. § 12.31(a)(2) (West 2007) (providing that an individual adjudged guilty of a capital felony in case in which the State does not seek the death penalty shall be imprisoned for life without parole).  In his remaining three issues, appellant challenges the constitutionality of his life sentence without the possibility of parole, asserting that this sentence violates the prohibition against cruel and unusual punishment and principles of separation of powers in the United States Constitution and in the Texas Constitution.

These three issues are raised for the first time on appeal.  Appellant has failed to preserve error by voicing these objections in the trial court.  *See Wilkerson v. State*, 347 S.W.3d 720, 722, 724 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).  To have preserved error on his complaints attacking the constitutionality of his life sentence, appellant should have made a timely, specific objection in the trial court.  *See* Tex. R. App. P. 33.1; *Wilkerson*, 347 S.W.3d at 722, 724.  Appellant never objected in the trial court that the sentencing statute violated the United States and Texas Constitutions. Because no specific and timely objection was made, appellant has failed to preserve error on these issues.  *See Wilkerson*, 347 S.W.3d at 722, 724.

---

[3] Because we do not reach the second prong of *Hall*, consideration of whether the record contains some evidence by which a rational jury could conclude that the accused is guilty of only the lesser offense and not the greater offense, we do not consider appellant's arguments that the second prong cannot be reconciled with the case of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 47 L. Ed. 2d 435 (2000).

As relevant to his third and fourth issues, appellant claims that a contemporaneous objection at trial was not necessary to raise on appeal the constitutionality of a mandatory sentence disallowing the use of mitigating evidence in sentencing. Appellant cites the case of *Graham v. Florida*, — U.S. —, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010), involving the Eighth Amendment. Under controlling legal precedent, when, as in the case under review, the State seeks punishment for a term of years, the Eighth Amendment does not afford criminal defendants the right to produce mitigating evidence. *See Harmelin v. Michigan*, 501 U.S. 957, 994–96, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991) (noting qualitative differences between capital punishment and a term-of-years sentence and refusing to extend individualized sentencing doctrine to a term-of-years sentencing context); *Wilkerson*, 347 S.W.3d at 722 (citing *Harmelin*).

Appellant acknowledges the controlling legal authority set forth in *Harmelin*, and notes that under this precedent an objection at trial would have been futile. Appellant cites *Graham* for support that he was not required to voice an objection that would have been futile. This same argument was rejected in *Wilkerson*. *See* 347 S.W.3d at 722.

The issue in *Graham* concerned whether a juvenile offender could be sentenced to life without parole for the commission of a non-homicide crime. *Graham*, 130 S. Ct. at 2017–18. The juvenile was not sentenced pursuant to a mandatory sentencing statute. *See id.* at 2018–19 (noting that the trial court received various sentencing recommendations). Ultimately, the court held that the juvenile offender's sentence was unconstitutional. *Id.* at 2034. But, as the *Wilkerson* court noted, the decision in *Graham* turned on the narrow proportionality principle of the Eighth Amendment and not on a right to produce mitigating evidence like the right appellant now alleges on appeal. *See id.* at 2023–30; *Wilkerson*, 347 S.W.3d at 723. Because appellant was not a juvenile at the time of the offense nor was he convicted of a non-homicide crime, *Graham*'s categorical ruling has no application to the facts of this case. *See Wilkerson*, 347 S.W.3d at 723 (rejecting same argument). Contrary to appellant's claim that *Harmelin* cannot be

13

reconciled with the facts of this case, *Harmelin* still provides controlling authority. *See id.* We overrule appellant's third and fourth issues.

As for appellant's fifth issue, in which he asserts his sentence is unconstitutional under the separation of powers of article II, section 1 of the Texas Constitution, the same argument has been rejected in *Wilkerson*. *See* 347 S.W.3d at 723–24. A facial challenge to the constitutionality of a statute must be preserved in the court below. *See Karenov v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009); *see Wilkerson*, 347 S.W.3d at 724. Appellant failed to preserve this complaint for appellate review. Accordingly, we overrule appellant's fifth issue.

The trial court's judgment is affirmed.


/s/ Kem Thompson Frost
Justice


Panel consists of Justices Frost, Seymore, and Jamison.

Do Not Publish — Tex. R. App. P. 47.2(b).

14