

# IN THE
# TENTH COURT OF APPEALS

### No. 10-13-00105-CR

**STANLEY WAYNE ROBERTSON,**

        **Appellant**

**v.**

**THE STATE OF TEXAS,**

        **Appellee**

### From the 85th District Court
### Brazos County, Texas
### Trial Court No. 10-04337-CRF-85

## MEMORANDUM OPINION

Stanley Robertson appeals from his conviction for the offense of capital murder. TEX. PEN. CODE ANN. § 19.03(a)(2) (West 2011). Robertson was convicted of intentionally committing the murder of Annie Toliver in the course of kidnapping or attempted kidnapping. Robertson complains that the evidence was insufficient for the jury to have found that he committed the murder in the course of kidnapping Toliver; the trial court erred by denying Robertson's request for a directed verdict; there was a fatal variance between the indictment and the proof at trial relating to the cause of

Toliver's death; the trial court abused its discretion by denying Robertson's request for the lesser-included offense of kidnapping in the jury charge; and the trial court abused its discretion in the admission of crime scene and autopsy photos pursuant to rule of evidence 403. Because we find no reversible error, we affirm the judgment of the trial court.

*Sufficiency of the Evidence and Directed Verdict*

In his first issue, Robertson complains that the evidence was insufficient for the jury to have found beyond a reasonable doubt that he committed the murder of Toliver while in the course of kidnapping or attempting to kidnap her. In his second issue, Robertson complains that the trial court erred by denying his motion for a directed verdict on the same basis. Because the standards of review are the same, we will address these issues together.

*Standard of Review*

A challenge to the trial court's denial of a motion for an instructed verdict or a motion for a directed verdict is treated as a challenge to the sufficiency of the evidence. *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996). The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9,

13 (Tex. Crim. App. 2007).  This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Jackson*, 443 U.S. at 319.  "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction."  *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011).

The Court of Criminal Appeals has also explained that our review of "all of the evidence" includes evidence that was properly and improperly admitted.  *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001).  And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination.  *Jackson v. Virginia*, 443 U.S. at 326.  Further, direct and circumstantial evidence are treated equally:  "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt."  *Hooper v. State*, 214 S.W.3d at 13.  Finally, it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties.  *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

*Capital Murder*

A person commits the offense of capital murder if that person intentionally or knowingly causes the death of an individual and intentionally commits murder in the course of committing or attempting to commit kidnapping.  *See* TEX. PENAL CODE ANN.

§§ 19.03(a)(2), 19.02(b)(1) (West 2011).  A person commits the offense of kidnapping if that person intentionally or knowingly abducts another person.  *See id*. § 20.03(a) (West 2011).  The term "abduct" means to restrain a person with the intent to prevent liberation by either (1) secreting or holding the person in a place where the person is unlikely to be found, or (2) using or threatening to use deadly force.  *See id*. § 20.01(2). To "restrain" means to restrict a person's movements without consent so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining that person.  *See id*. § 20.01(1).

Robertson argues that the evidence was insufficient to establish that the murder of Toliver was committed in the course of kidnapping or attempted kidnapping. Robertson contends that because the murder occurred first, the kidnapping, if any, took place after Toliver was stabbed; therefore he could not have formed the intent to kidnap or attempt to kidnap Toliver before or prior to her murder.  Robertson further argues that Toliver had accompanied him voluntarily to Walmart and that there was no evidence that Toliver's movements were ever restricted or restrained by Robertson prior to the stabbing.

*Facts*

In 2010, Robertson and Toliver's daughter, Tammy, were living together with Tammy's children.  One day in early July of 2010, Tammy went to get her nails done. While she was gone, Robertson called her twice and told her to get her things out of the

residence, but she did not think he was serious. Upon returning to the residence, Tammy discovered that Robertson was throwing her clothing out of the window. An argument ensued and Tammy went to a neighbor's house and called the police. The police took Robertson and dropped him off at another location in Bryan.

Robertson returned to the residence, and entered by kicking out a window. He had a hammer and tried to hit Tammy with it but the head of the hammer came off the handle. Robertson grabbed a knife and Tammy dove out the window. Robertson caught up to Tammy, held the knife to her throat, and threatened to cut or stab her if she moved or did anything. Robertson and Tammy went into the residence where her children were crying. Tammy's son got a knife but dropped it when Robertson threatened to stab Tammy. Tammy's children called the police who came and arrested Robertson.

After Robertson's arrest, Tammy and her children ultimately moved in with Tammy's sister in Giddings. Tammy did not tell Robertson where they were even though he had been calling her and her friends on a regular basis since his arrest. Robertson was released on bond after two weeks in jail. On August 13, 2010, approximately a month after his arrest, Robertson called Toliver and told her he had some money for clothing for Tammy's children because school was starting soon. Toliver agreed to allow Robertson to pick up her and her son, Curtis, and to take them

to Walmart shopping. Less than an hour before picking them up, Robertson purchased a knife at a Walmart in Bryan.

When they arrived at the Walmart in College Station, Toliver was on her cell phone and did not get out of the vehicle. Robertson and Curtis entered the store. Shortly after going in, Curtis went to the restroom and he and Robertson split up. Surveillance video recovered from Walmart showed that Robertson immediately left the store and went to the parking lot to his vehicle. The video further shows Robertson going to the passenger side of the vehicle. Approximately two minutes later, Robertson walked around the vehicle, got in, and quickly left the parking lot.

Toliver's friend Helen had been on the phone with Toliver, who testified that during that conversation she "heard something go, Unh" and was disconnected. Helen attempted to call Toliver again but was unsuccessful. Helen called Curtis to check on Toliver. After he left the restroom, Curtis was unable to locate Robertson so after speaking with Helen, he went outside to find the vehicle but it was gone. Law enforcement would later find drops of blood next to where the passenger door of the vehicle Robertson was driving was parked, which DNA testing established to be Toliver's blood.

Robertson called Helen using Toliver's cell phone and told her that Toliver was dead. Robertson then called Tammy from Toliver's cell phone and told her that he had kidnapped Toliver. When Robertson called Tammy, Tammy put it on the speaker.

Tammy was at her sister-in-law Alisha's house with her children at this time. Robertson told Tammy that he had Toliver and that she was going to die that day. He said he had a gun and said he was going to shoot Toliver.

Robertson allowed Tammy to speak to Toliver. Toliver's voice was described as "gurgly" and she was having difficulty breathing and could not speak more than two or three words at a time. Toliver told Tammy, "I'm hurt. He stabbed me. I'm all cut up." Robertson took the phone from Toliver and told Tammy that he would kill Toliver if Tammy did not meet him or if the police were called. Robertson then told Tammy that he had taken Toliver because Tammy did not visit him in jail or pick him up when he was released. He wanted to hurt Tammy as much as he was hurt. He told Tammy that she would be going to a funeral in the next week or two and that he had stabbed Toliver sixteen times. Tammy, Alisha, and Tammy's brother and Alicia's husband Richard agreed to meet Robertson in Bryan, but Robertson did not show up.

During this time, Alisha had contacted law enforcement on a separate cell phone. A hostage negotiator named Harkrider became involved and began attempting to contact Robertson. Robertson and Harkrider spoke several times over the next several hours, during which time Robertson indicated that Toliver had not been injured other than him hitting her in the parking lot at the Walmart and that he would return her to Bryan and release her. Robertson did tell Harkrider that he was armed and intended to get into a shootout with law enforcement. Harkrider did not know until later that

Toliver had been stabbed. Harkrider believed from his conversations with Robertson that he had restrained Toliver and that she was not free to leave.

During this time, Robertson had in fact driven to Fort Worth, where his vehicle was spotted by a patrol unit. Two patrol cars activated their lights but Robertson did not stop. Robertson was able to drive around a spike strip, then suddenly stopped and turned around. Robertson then began driving the wrong way into oncoming traffic and crashed head-on into a patrol car, causing his vehicle to flip. The vehicle had a lot of blood in it and a bloody knife was found on the road near Robertson's vehicle; however, Toliver was not in the vehicle. The seat belt on the passenger side of the vehicle was bloody and had cut marks consistent with someone trying to stab a person with the seat belt on. DNA testing would later establish that the blood in the vehicle and on the knife blade was that of Toliver. The DNA found on the handle of the knife was from a mixture of Toliver and Robertson. Robertson's clothing was also taken and Toliver's blood was found on his jeans.

A helicopter had been sent to search for a homicide victim, and Toliver's body was soon found behind a business in Fort Worth. Toliver's body was found face-up lying in a parking lot and was covered in blood.

An autopsy was performed on Toliver which showed that Toliver had sustained thirty-one stab wounds and seven incised wounds on her face, neck, chest, back, arms,

and hands.[1]  None of the injuries were in and of themselves immediately fatal, but two stab wounds had entered Toliver's pleural cavities on both the right and left side and had caused her lungs to collapse.  The doctor who performed the autopsy stated that:

> Actually, the conclusion was since there's no fatal injury on the body, there's clotted blood, I would think Annie Toliver could have survived if there were emergency treatment during this period of time by removing the air and blood in the pleural cavities and blood transfusion.

> In this case the mechanism—the mechanism of the death is the combination of the hemorrhage, the collapse of the lungs, the fear, the pain, and the suffering during this period of—during the period of two to six hours which is consistent with the timeline provided to me by the police department.

> The cause of death in this case is multiple stab wounds, the manner of the death is homicide.

Because the State charged Robertson with capital murder in the course of committing or attempting to commit kidnapping, the State had the burden of proving a restraint was made with a specific intent to prevent liberation, either by secreting or use or threat of deadly force.  *Brimage v. State*, 918 S.W.2d 466, 475-76 (Tex. Crim. App. 1996).  Additionally, the State had to prove Robertson developed the requisite intent for kidnapping at or before the time of the victim's death.  *Santellan v. State*, 939 S.W.2d 155, 162 (Tex. Crim. App. 1997).

---

[1] The difference between a stab wound and an incised wound was described by the physician who performed the autopsy as follows:  "[t]he stab wound is the wound—the depth of the wound is greater than the length of the wound; the incised wound, also called a cut, is the wound in which the length of the wound is greater than the depth of the wound."

Robertson argues that the evidence showed that Toliver was stabbed before Robertson left the Walmart parking lot and there was no evidence that Toliver's movement was restricted without her consent prior to her being stabbed. Robertson contends that the evidence must establish that the kidnapping preceded the homicide, and that is not supported by the evidence because the murder began at the time Toliver was first stabbed.

In support of his argument, Robertson cites to *Herrin v. State*, 125 S.W.3d 436 (Tex. Crim. App. 2002). In *Herrin v. State*, the defendant got into an altercation with the victim and shot him. After the victim was dead, Herrin moved the body and hid it in the woods where it was later discovered. The Court of Criminal Appeals determined that the evidence was insufficient for the jury to have found that the murder was committed in the course of kidnapping or attempted kidnapping because there was no evidence that Herrin intended to kidnap the victim at or before the time he committed the murder. *See Herrin*, 125 S.W.3d at 440-41 ("Appellant did not shoot to merely disable or harm [the victim] so that he could then abduct him, but shot him at close range in the vital organs in an obvious effort to kill him.").

In *Santellan v. State*, the defendant shot the victim in a parking lot. *See Santellan v. State*, 939 S.W.2d 155. One shot was to her head, which testimony showed would have caused immediate brain death but it was possible that the victim could have still been alive for three to five minutes after that time. The defendant picked the victim up after

he shot her, put her in his vehicle, and drove with her to a hotel. The Court of Criminal Appeals found that the defendant's actions taken while the victim could possibly have still been alive were sufficient for a reasonable juror to have found that the defendant developed the intent to kidnap the victim before or at the time of her death. *Santellan*, 939 S.W.2d at 164.

In this case, Toliver's death did not occur for approximately two to six hours after Robertson first stabbed her. The jury could reasonably have inferred that Robertson's actions in stabbing Toliver through her seat belt could have shown restraint sufficient to establish kidnapping while he was stabbing Toliver. The jury also could have inferred that Robertson's actions in driving around for hours while Toliver was still alive and could potentially have been saved while attempting to get Tammy to meet him also reasonably served to establish that Robertson intended to kidnap Toliver prior to Toliver's death. We find that the evidence was sufficient for any reasonable juror to have found that Robertson kidnapped Toliver before or at the time of her death. *See Santellan*, 939 S.W.2d at 164. Further, the trial court did not err by denying Robertson's motion for a directed verdict on this same basis. We overrule issues one and two.

*Fatal Variance*

In his third issue, Robertson complains that there was a fatal variance between the indictment and the evidence at trial. Robertson argues that because the indictment alleged that he committed the murder of Toliver by stabbing, but the evidence at trial

showed that Robertson did not cause the death of Toliver in the manner alleged, but rather by his failure to seek medical attention.

"A 'variance' occurs whenever there is a discrepancy between the allegations in the indictment and the proof offered at trial." *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011). A variance in pleading and proof can occur in two ways. *Johnson v. State*, 364 S.W.3d 292, 294 (Tex. Crim. App. 2012). First, a variance can involve the statutory language that defines the offense, such as when a statute specifies alternate methods by which an offense could be committed, the charging instrument pleads one of those alternate methods, but the State proves, instead, an unpled method. *Id*. "For example, the retaliation statute makes it a crime to threaten a 'witness' or 'informant.'" *Id*. "The first type of variance occurs if the State pleads only 'witness' in the charging instrument and proves only the unpled element of 'informant' at trial." *Id*. Second, a variance can involve a non-statutory allegation that is descriptive of the offense in some way, such as when the charging instrument pleads the offense was committed by stabbing with a knife, but the State proves at trial that bludgeoning with a baseball bat was the cause of death. *Id*. The variance alleged by Robertson is of the second type.

As alleged against Robertson, the elements of capital murder are that he intentionally caused the death of Toliver in the course of committing or attempting to commit kidnapping. TEX. PENAL CODE ANN. §§ 19.02(b)(1), 19.03 (West 2011). The manner in which Robertson caused Toliver's death, or the means used, are not statutory

elements of the offense, and do not affect the allowable unit of prosecution. *Johnson*, 364 S.W.3d at 296-97.

In *Johnson*, using the example of alleging death by stabbing versus the proof at trial of bludgeoning with a baseball bat as the cause of death, the Court of Criminal Appeals noted, "These methods of committing murder do describe an element of the offense: the element of causation. But murder is a result-of-conduct crime. What caused the victim's death is not the focus or gravamen of the offense; the focus or gravamen of the offense is that the victim was killed. Variances such as this can never be material because such a variance can never show an 'entirely different offense' than what was alleged." *Id*. at 298 (citations omitted). Immaterial non-statutory variances do not render the evidence legally insufficient. *Id*. at 299.

We disagree with Robertson's contention that Toliver died solely from a failure to seek medical attention. Toliver would not have required medical attention at all if Robertson had not stabbed her more than thirty times. However, even if the failure to seek medical attention was part of the cause of Toliver's death, we find that the variance, if any, is immaterial, and the evidence was not insufficient on this basis. We overrule issue three.

*Jury Charge Error*

In his fourth issue, Robertson complains that the trial court erred by overruling his objections to the jury charge. Robertson argues that he was entitled to an instruction

on the lesser-included offenses of aggravated kidnapping and kidnapping. The charge presented to the jury did contain the lesser-included offenses of murder, felony murder, and manslaughter.

An offense is a lesser-included offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the charged offense only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

TEX. CODE. CRIM. PROC. ANN. art. 37.09 (West 2006).

To warrant a jury-charge instruction on a lesser-included offense, a defendant must demonstrate that (1) the elements of the lesser offense are contained within the proof necessary to establish the charged offense as pleaded in the State's indictment, and (2) the record contains some evidence by which a rational jury could conclude that if the accused is guilty, the accused is guilty of only the lesser offense and not the greater offense. *See Hall v. State*, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007) (applying "pleadings approach" as sole test for first step in determining whether a party is entitled to a lesser-offense instruction).

As reflected in the indictment, Robertson was charged with intentionally causing Toliver's death while in the course of committing or attempting to commit the kidnapping of Toliver.  *See* TEX. PENAL CODE ANN. § 19.03(a)(2).  Kidnapping is a lesser-included offense of the capital murder charge as alleged against Robertson.  *See id*.; *see also Rodriguez v. State*, 146 S.W.3d 674, 677 (Tex. Crim. App. 2004).  However, the offense of aggravated kidnapping, for which Robertson requested a jury instruction as a lesser-included offense, requires proof of an additional element that kidnapping does not.  *Compare* TEX. PENAL CODE ANN. § 20.03(a) (a person commits the offense of kidnapping if that person "intentionally or knowingly abducts another person"), *with* TEX. PENAL CODE ANN. § 20.04(a), (b) (a person commits the offense of aggravated kidnapping if the person "intentionally or knowingly abducts another person with the intent" to commit a host of other actions or "intentionally or knowingly abducts another person and uses or exhibits a deadly weapon in the commission of the offense"); *see Mohammed v. State*, 127 S.W.3d 163, 168 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd).  Aggravated kidnapping requires proof of more than all the facts required to prove the offense as charged rather that "the same or less than all the facts," as contemplated by article 37.09(1).  *See Mohammed*, 127 S.W.3d at 168.  There are elements of aggravated kidnapping which are not contained within the proof necessary to establish the charged offense as pleaded in the State's indictment.  *See Hall*, 225 S.W.3d at 535; *see also Mohammed*, 127 S.W.3d at 168.  Therefore, aggravated kidnapping could not properly be

included as a lesser-included offense in this proceeding. *See id*. The trial court did not err in overruling Robertson's objection to not include an instruction on aggravated kidnapping.

As to the lesser-included offense of kidnapping, Robertson argues that because the cause of death was the failure to seek medical attention and not stabbing, he was not guilty of the offense of capital murder as alleged in the indictment. Further, Robertson argues that because of this variance, the jury could not have found him guilty of the death of Toliver at all, and that the jury charge did not allow the jury to find him guilty of kidnapping, the only offense that he contends that the State actually proved. Robertson argues that it was possible that the jury could have found that he was guilty of only the lesser offense of kidnapping.

As set forth in issue three above, we disagree with Robertson's assertion that there was a fatal variance between the indictment and the proof at trial relating to the cause of Toliver's death. Clearly, a rational juror could have determined that the thirty-one stab wounds and seven incised wounds that Robertson undisputedly inflicted on Toliver were a cause of Toliver's death, which was consistent with the allegations in the indictment. Because of this, we find that the record does not contain "some evidence by which a rational jury could conclude that if the accused is guilty, the accused is guilty of only the lesser offense and not the greater offense" as Robertson has argued. Therefore, Robertson was not entitled to the inclusion of the lesser-included offense of kidnapping

and the trial court did not err by refusing his requested instruction. We overrule issue four.

*Admission of Evidence*

Robertson complains that the trial court abused its discretion in the admission of three photographs of Tolbert's body taken at the scene where her body was located and eight photographs taken during the autopsy because the probative value of the photographs was greatly outweighed by unfair prejudice. TEX. R. EVID. 403.

*Standard of Review*

Under rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence. TEX. R. EVID. 403. Rule 403 carries a presumption that relevant evidence will be more probative than prejudicial and favors the admission of relevant evidence. *Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007). When the evidence is a photograph, if the photograph has elements that are genuinely helpful to the jury in making its decision, the photograph is inadmissible only if the helpful aspects are substantially outweighed by the emotional and prejudicial aspects. *Erazo v. State*, 144 S.W.3d 487, 491-92 (Tex. Crim. App. 2004). Photographs depicting matters described by admissible testimony are generally admissible. *Erazo*, 144 S.W.3d at 489.

Our analysis of the trial court's ruling pursuant to rule 403 includes, but is not limited to, the following factors: (1) the probative value of the evidence, (2) the potential to impress the jury in some irrational yet indelible way, (3) the time needed to develop the evidence, and (4) the proponent's need for the evidence. *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012); *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006). In determining whether the probative value of a photograph is substantially outweighed by the danger of unfair prejudice, relevant factors include "the number of exhibits offered, their gruesomeness, their detail, their size, whether they are in color or black-and-white, whether they are close-up, whether the body depicted is clothed or naked, the availability of other means of proof, and other circumstances unique to the individual case." *Williams v. State*, 301 S.W.3d 675, 690 (Tex. Crim. App. 2009).

We review the trial court's ruling on the admissibility of a photograph under an abuse of discretion standard and will not reverse the trial court's ruling unless it falls outside the zone of reasonable disagreement. *See Young v. State*, 283 S.W.3d 854, 874 (Tex. Crim. App. 2009). In this determination, we must do more than decide whether the trial court conducted the required balancing analysis between probative and prejudicial values. *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006). We must also determine that the trial court's ruling is reasonable in view of all the relevant facts. *Id*.

"If a photograph is competent, material and relevant to the issue on trial, it is not rendered inadmissible merely because it is gruesome or might tend to arouse the passions of the jury, unless it is offered solely to inflame the minds of the jury." *Erazo*, 144 S.W.3d at 489. The probative value of a color photograph or a videotape depicting the recovery of a murder victim's body may outweigh its prejudicial effect even when the depiction includes close-ups and lingering camera angles, so long as the images simply reflect the gruesomeness of the offense. *See Ripkowski v. State*, 61 S.W.3d 378, 392 (Tex. Crim. App. 2001). Similarly, the probative value of a series of autopsy photos of murder victims may outweigh its prejudicial effect when the series of photos is used to assist a medical examiner's testimony. *Newbury v. State*, 135 S.W.3d 22, 43 (Tex. Crim. App. 2004).

*Crime Scene Photos*

Robertson complains of three photographs that were introduced in a group of twenty photographs that depicted the location where Toliver's body was located and showed Toliver's body lying in a parking lot. Two of the objected-to photographs were close-up photographs of Toliver's face and the third was a photograph of her entire body as it was found. Toliver had been found lying face-up in the parking lot with her arms outstretched.

The photographs were in color and were somewhat gruesome in that two of them depicted the wounds to Toliver's face and had dried blood visible on them. The

third was a view of Toliver's entire body which was clothed. The third photograph showed that Toliver's shirt was bloody and had holes in it where Robertson had stabbed her. The photographs had probative value to the State in that they depicted the condition of Toliver when she was found. There was little time spent on those photographs specifically, and the gruesomeness of the photographs is attributable to the subject matter it depicts, but are no more gruesome than would be expected in this sort of crime. *See Gallo*, 239 S.W.3d at 763.

*Autopsy Photos*

Robertson further complains of eight photographs taken during the autopsy of Toliver that depicted the wounds inflicted by Robertson. Except for one photograph, the photographs were taken after Toliver's body had been cleaned and are not bloody or especially gruesome, but do show the wounds inflicted on Toliver. The other photograph was taken before Toliver's body was cleaned and was a close-up of Toliver's hand showing what the examiner described as defensive wounds. These photographs were used during the testimony of the autopsy examiner to explain the wounds that were found on Toliver's body and what effect they had in his determination of the cause of her death. *See Newbury v. State*, 135 S.W.3d at 43. There was no mutilation of the body caused by the autopsy portrayed in the photographs.

Considering the relevant factors set forth in determining whether the trial court abused its discretion in admitting the photographs, we find that there was no abuse of discretion in the admission of the photographs. We overrule issue five.

*Conclusion*

Having found no reversible error, we affirm the judgment of the trial court.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed April 16, 2015
Do not publish
[CRPM]

